# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                    No.    CV 16-524 JAP/GBW
                                                         CR 11-282 JAP

ROMAN KIRBY,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter is before the Court on Defendant's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.  *Doc. 1*.[1]  Defendant seeks to have his conviction and sentence set aside pursuant to the Supreme Court's decision in *Johnson v. United States*, which struck down the residual clause of the Armed Career Criminal Act (ACCA) as unconstitutionally vague under the Fifth Amendment Due Process Clause. 135 S. Ct. 2551 (2015).  *See generally docs 1, 12*.  Having reviewed the pleadings and record before the Court, I recommend denying the Motion.

I.    **BACKGROUND**

Defendant pled guilty to being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) on August 30, 2011.  *Cr. docs. 40, 41*. Ordinarily, this offense carries a maximum term of imprisonment of ten years.  18

---

[1] Citations to "*doc.*" refer to docket numbers filed in Case No. 16-CV-524-JAP/GBW.  Citations to "*cr. doc.*" refer to the attendant criminal docket, Case No. 11-CR-282-JAP.  For filings made on both dockets, only the civil docket number is given.

U.S.C. § 924(a)(2).  However, the ACCA provides that a defendant convicted of being a

felon in possession of a firearm faces an enhanced sentence where he has three or more

previous convictions for a "violent felony or a serious drug offense, or both, committed

on occasions different from one another[.]"  *Id.* § 924(e)(1).  Specifically, defendants with

three such previous convictions are subject to a maximum sentence of life imprisonment

and a minimum of fifteen years imprisonment.  *Id.*; *see also Logan v. United States*, 552

U.S. 23, 27 (2007).  At the time of Defendant's sentencing, the ACCA defined "violent

felony" as any crime punishable by imprisonment for a term exceeding one year that:

> (i)  has as an element the use, attempted use, or threatened use
> of physical force against the person of another; or
> is burglary, arson, or extortion, involves use of explosives, *or*
> *otherwise involves conduct that presents a serious potential risk of*
> *physical injury to another[.]*

18 U.S.C. § 924(e)(2)(B) (emphasis added).  The italicized portion is known as "the

residual clause" of the ACCA, which the Supreme Court struck down as

unconstitutional under the void-for-vagueness doctrine in its *Johnson* decision.  *See* 135

S. Ct. at 2557-61.[2]

   After Defendant pled guilty to being a felon in possession of a firearm, the

United States Probation Office prepared a presentence report ("PSR") to aid the Court

in sentencing.  The PSR included the finding that Defendant had three prior convictions

---

[2] The Supreme Court has instructed that its *Johnson* decision is retroactively applicable to cases on collateral review.  *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016).  Because Defendant filed his § 2255 petition within one year of the Supreme Court's decision in *Johnson*, it is properly before the Court to decide whether *Johnson* applies to—and justifies vacating—Defendant's sentence, which was enhanced under the ACCA.  *See Dodd v. United States*, 545 U.S. 353, 357 (2005).

for violent felonies, qualifying him as an armed career criminal under the ACCA.  PSR ¶ 24.  Consequently, he qualified for the increased statutory punishment under the ACCA and the sentencing guideline enhancement under U.S.S.G. § 4B1.4(b).  Additionally, Defendant's base offense level was automatically set at 34[3] because Defendant possessed the firearm in connection with a crime of violence—namely, one count of Aggravated Battery Against a Household Member and two counts of Aggravated Assault Against a Household Member, although those state court charges were dismissed in light of the pending federal charge.  *Id.*

Prior to sentencing, both Defendant and the United States submitted sentencing memoranda agreeing with the PSR's findings that Defendant qualified as an armed career offender under the ACCA, that his total offense level was 31 with a criminal history category of VI, and that, as a result, the applicable sentencing guideline range was 188-235 months.  *Cr. doc. 46* at 2; *cr. doc. 48* at 1-2.  A sentencing hearing was held on January 12, 2012, during which the Court accepted Defendant's guilty plea and adopted the findings of the undisputed PSR.  *Cr. docs. 49, 50.*  With a minimum required sentence of 180 months and a guideline range of 188-235 months, Defendant was sentenced to 188 months of imprisonment and five years of supervised release.  *See id.*

Defendant's past convictions that were classified in the PSR as "violent felonies" justifying his designation as an armed career criminal include: (1) Aggravated Assault

---

[3] The offense level was thereafter reduced to 31 for acceptance of responsibility.  PSR  ¶¶ 25, 26, 63.

on a Peace Officer (Fourth Degree Felony) (Eighth Judicial District Court, Colfax County, New Mexico, case number CR-92-122); (2) Shooting at or from a Motor Vehicle (Great Bodily Harm) (Second Degree Felony) (Second Judicial District Court, Albuquerque, New Mexico, case number D-202-CR-9600872); and (3) Attempt to Commit a Felony, to Wit: First Degree Murder (Second Degree Felony) (Second Judicial District Court, Albuquerque, New Mexico, case number D-202-CR-9702343).  PSR ¶ 24. The PSR also reflects convictions for Trafficking (by Possession with Intent to Distribute) (Second Degree Felony), Bribery of a Witness (Retaliation) (Fourth Degree Felony), and Possession of a Controlled Substance with Intent to Distribute (Methamphetamine) (Third Degree Felony), each of which contributed three criminal history points under U.S.S.G. § 4A1.1(a).  PSR ¶¶ 30, 32, 34.

## II.   LEGAL STANDARD

Whether the criminal convictions underlying Defendant's ACCA enhancement qualify as "violent felonies" depends on whether they satisfy the definition of "violent felony" under the remaining clauses of the ACCA, now that the residual clause has been struck down as unconstitutional.  *See* 18 U.S.C. § 924(e)(2)(B).

In making its determination, the Court should consider the offense "generically, that is to say, . . . in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay v. U.S.*, 553 U.S. 137, 141 (2008).   This "categorical approach" requires the Court to "consult

only the fact of conviction and the statutory definition of the prior offense, and [] not generally consider the particular facts disclosed by the record of conviction." *United States v. Ramon Silva*, 608 F.3d 663, 669 (10th Cir. 2010) (internal quotations omitted); *see also Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). In other words, the categorical approach requires the Court to presume that Defendant's conviction under a given statute "rested upon nothing more than the least of the acts criminalized, before determining whether those acts are encompassed by the generic federal offense." *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1680 (2013) (alterations and citation omitted).

However, this focus on the minimum culpable conduct that would satisfy the elements of the statute "is not an invitation to apply 'legal imagination' to the state offense; there must be a 'realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" *Id.* at 1684-85 (quoting *Gonzales v. Duenas -Alvarez*, 549 U.S. 183, 193 (2007)). "Decisions from the state supreme court best indicate a 'realistic probability,' supplemented by decisions from the intermediate-appellate courts." *United States v. Harris*, __ F.3d __, No. 16-1237, 2017 WL 34458, at *3 (10th Cir. Jan. 4, 2017).

The Supreme Court explained in *Johnson v. United States*, 559 U.S. 133, 140 (2010)[4] that the term "physical force" as used in the ACCA "means *violent* force—that is, force capable of causing physical pain or injury to another person." (Emphasis in original.)

---

[4] To avoid confusion, this case will be referred to as *Johnson I* to distinguish it from the 2015 *Johnson* opinion striking down the residual clause of the ACCA (hereinafter referred to as *Johnson II*).

Nonetheless, the force required to satisfy that element need not be sufficient to cause serious injury—it "might consist . . . of only that degree of force necessary to inflict pain—a slap in the face, for example." *Id.* at 1272. Therefore, in evaluating whether Defendant's past convictions under New Mexico law constitute violent felonies under the ACCA, the Court must first consider whether each state statute that he violated necessarily proscribes conduct that "has as an element the use, attempted use, or threatened use of" *violent* force against the person of another. If so, it is categorically a "violent felony" under the elements clause of the ACCA.

If, however, the statutory definition of any of Defendant's prior offenses is *broader* than the ACCA's definition of "violent felony" and the prior offense is "divisible," the Court will then apply what is known as a "modified-categorical approach." *Ramon Silva*, 608 F.3d at 669; *see also Mathis*, 136 S. Ct. at 2249, 2256. Under this approach, the Court should consult "charging documents and documents of conviction to determine whether the defendant in a particular case was convicted of an offense that qualifies as a violent felony." *Id.* Any three such felonies may validly underlie the application of the ACCA enhancement. 18 U.S.C. § 924(e)(2)(B)(i).

Additionally, while the sentencing court imposed the ACCA enhancement on the basis of three predicate "violent felony" offenses, a "serious drug offense" may also underlie the application of the ACCA enhancement. *Id.* § 924(e)(1). The United States raises one of Defendant's past drug trafficking offenses as a potential alternative

predicate for the ACCA enhancement on the basis that it qualifies as a "serious drug offense."  *Doc. 8* at 7.

The ACCA defines "serious drug offense," in pertinent part, as "an offense under State law, involving . . . possessing with intent to . . . distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law[.]"  18 U.S.C.A. § 924(e)(2)(A)(ii).  Therefore, if the Court ultimately finds that any one of the three predicate "violent felony" offenses qualifying Defendant as an armed career criminal at sentencing is no longer a violent felony post-*Johnson II*, it must then consider whether Defendant has any combination of three prior offenses that are either serious drug offenses or violent felonies justifying the ACCA enhancement.

## III.   ANALYSIS

Defendant challenges his sentence on the basis that, after *Johnson II*, his past criminal convictions identified in the PSR as predicate offenses compelling the ACCA enhancement no longer qualify as "violent felonies" under the remaining clauses of the ACCA.  *Doc. 1* at 4; *see generally doc. 12*.  He argues that he therefore does not qualify as an armed career criminal and is entitled to be resentenced without the ACCA enhancement.  *Doc. 12* at 3, 28.  Each of Defendant's predicate criminal convictions for his armed career criminal designation will be addressed in turn to determine whether the ACCA enhancement was properly applied in light of *Johnson II*.

As a preliminary matter, Defendant's past offenses identified in the PSR as qualifying him as an armed career criminal clearly do not fall under the clause enumerating the specific felonies of "burglary, arson, or extortion," or those "involv[ing] use of explosives." 18 U.S.C. § 924 (e)(2)(B)(ii); *see also* PSR ¶ 24.[5] Therefore, the question before the Court is whether at least three of Defendant's past convictions qualify as violent felonies under the "elements clause"—that is, whether each conviction "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" *Id.* § 924 (e)(2)(B)(i).

Finally, the United States has also identified two of Defendant's other past convictions as alternative predicate offenses for the ACCA enhancement: Bribery of a Witness (Retaliation), in violation of N.M.S.A. § 30-24-3, and Trafficking (Possession with Intent to Distribute), in violation of N.M.S.A. § 30-31-20(A)(3). Analysis of the bribery offense requires the Court to evaluate whether the offense either matches the generic offense of "extortion," as listed in 18 U.S.C. § 924 (e)(2)(B)(ii), or otherwise

---

[5] It should be noted here that the United States points to Defendant's past conviction of Bribery of a Witness (Retaliation), in violation of N.M.S.A. § 30-24-3(B), as an alternative predicate for the ACCA enhancement although it was not identified as such in the PSR. *See doc. 8* at 6-7; PSR ¶ 24. As noted below, Defendant does not address the pertinent retaliation offense in his briefing, but instead argues that the "threats or bribes" offenses included under subsection A of the same bribery statute are not violent felonies. *See doc. 12* at 23-25. Regardless of the merits of that position, if Defendant had been convicted under subsection A, it would be necessary to analyze whether such a conviction matches the elements of generic extortion because "extortion" is an enumerated offense. *See Scheidler v. Nat'l Organization for Women, Inc.*, 537 U.S. 393, 409–10 (2003) (explaining that generic extortion entails "obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats"). However, as discussed more in-depth below, examination of the relevant documents reveals that Defendant was convicted under subsection B rather than subsection A. Thus, this analysis is unnecessary.

qualifies as a "violent felony" under the elements clause.  Analysis of the trafficking

offense requires the Court to determine whether that crime categorically meets the

definition of "serious drug offense" under 18 U.S.C. § 924(e)(2)(A)(ii).  The undersigned

will turn to these alternative predicate offenses after first addressing whether the

offenses identified at sentencing as the basis for the ACCA enhancement remain

"violent felonies" in light of *Johnson II*.

>    *A.  Aggravated Assault on a Peace Officer*

It is undisputed that Defendant was convicted of Aggravated Assault on a Peace

Officer pursuant to a guilty plea in November 1992.  *Doc. 8-1* at 1-3; *see also doc. 12* at 1,

7-17.  The New Mexico statute criminalizing aggravated assault upon a peace officer

reads:

> A.  Aggravated assault upon a peace officer consists of:
>    (1) unlawfully assaulting or striking at a peace officer with a deadly
>    weapon while he is in the lawful discharge of his duties;
>    (2) committing assault by threatening or menacing a peace officer
>    who is engaged in the lawful discharge of his duties by a person
>    wearing a mask, hood, robe or other covering upon the face, head
>    or body, or while disguised in any manner so as to conceal identity;
>    or
>    (3) willfully and intentionally assaulting a peace officer while he is
>    in the lawful discharge of his duties with intent to commit any
>    felony.
> B.  Whoever commits aggravated assault upon a peace officer is guilty of a
> third degree felony.

N.M.S.A. § 30-22-22.

This statute has a divisible structure, as it disjunctively lists alternative elements rather than enumerating various factual means of committing a single element—that is, if all of the elements under *either* (A)(1), (A)(2), *or* (A)(3) of the statute are met by a defendant's conduct, the defendant has committed the crime of aggravated assault on a peace officer. Each subsection contains an independent, alternative set of elements. *See Mathis*, 136 S. Ct. at 2249. Defendant does not contest the divisibility of the statute or that he was convicted specifically of the crime defined under subsection (A)(1): "unlawfully assaulting or striking at a peace officer with a deadly weapon while he is in the lawful discharge of his duties." *See doc. 12* at 1, 7. The criminal judgment from the original offense and the PSR relating to the instant offense confirm that Defendant was convicted under (A)(1) of the statute. *See doc. 8-1* at 2, PSR ¶ 28. The Court may therefore apply the modified categorical approach in analyzing whether this subsection qualifies as a violent felony under the ACCA. *Mathis*, 136 S. Ct. at 2249.

Defendant asserts that aggravated assault upon a peace officer, as defined in N.M.S.A. § 30-22-22(A)(1), is not a violent felony under the ACCA. Defendant frames the minimum culpable conduct under the statute as "trying to touch an officer with a stick, a rock, or a tire tool," which he argues does not require the use, attempted use, or threatened use of violent physical force against the person of another under the *Johnson I* standard. *Doc. 12* at 9. Although Defendant was convicted of assaulting or striking the person of another with a deadly weapon, Defendant argues that "[t]he element of

10

use of a deadly weapon does not make it violent, because the object need not be employed as a weapon to commit the offense proscribed by [N.M.S.A. §] 30-22-22(A)(1)." *Id.* at 12.  He bases this argument on the fact that the New Mexico statute defining "deadly weapon" contains an enumerated list of objects that are categorically considered deadly weapons, followed by a catch-all clause: ". . . or any other weapons with which dangerous wounds can be inflicted[.]"  N.M.S.A. § 30-1-12.  Accordingly, where a statute contains a "deadly weapon" element, but the object used in the charged offense is not specifically listed in the "deadly weapon" statute, a jury may nevertheless find that the "deadly weapon" element is met where the object in question, "when used as a weapon, could cause death or great bodily harm."  *See, e.g.*, NM R CR UJI 14-2201. Therefore, Defendant avers that the aggravated assault upon a peace officer can be committed "by someone who has never used the object as a deadly weapon, does not know how to use it as a deadly weapon, and is not aware that it could be used as a deadly weapon." *Id.* at 14.

However, Defendant's analysis is founded on an incorrect premise.  Where an object alleged to be a deadly weapon under a New Mexico statute containing a "deadly weapon" element is unlisted in N.M.S.A. § 30-1-12, such as a stick or a tire tool, a jury must find "that [the] object *was actually used as a weapon* and that it was capable of causing the wounds described in the statute."  *State v. Nick R.*, 218 P.3d 868, 876 (N.M. 2009) (emphasis added).   Therefore, under New Mexico law, a defendant may not be

convicted of an offense containing a "deadly weapon" element on the sole basis that he

possessed an item that could theoretically be used as a deadly weapon, as Defendant

contends.  Rather, in addition to proof that the object used was "capable of producing

death or great bodily harm," there must also be proof that the object was used as a

weapon and that a defendant "carried the instrument because it could be used as a

weapon."  *State v. Blea*, 668 P.2d 1114, 1116 (1983).  *See also State v. Traeger*, 29 P.3d

518,523 (N.M. 2001) ("[T]o criminalize the carrying of a baseball bat, without a jury

finding that the baseball bat was a deadly weapon and that the baseball bat was in fact

being carried because it could be used as a weapon, is incongruent with New Mexico

law").

Defendant is thus incorrect to assert that he could have been convicted of the

crime of aggravated assault on a peace officer by carrying an unlisted object—such as a

stick or tire tool—that he was unaware could be used as a deadly weapon, while

challenging the authority of the officer in a rude manner and trying to touch him with

the object.  Instead, a conviction under the statute would require additional proof that

Defendant was carrying the stick or tire tool because it could be used as a weapon, and

moreover, that he actually used it as a weapon.

The undersigned cannot conjure any far-fetched hypothetical conduct that could

satisfy the elements of this crime without also satisfying the ACCA definition of a

violent felony under the elements clause.  And in any event, the categorical approach

does not demand that the Court do so.  As discussed above, "there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'"  *Moncrieffe*, 133 S. Ct. at 1684-85 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

There is no realistic probability that a defendant could (1) attempt to touch a peace officer, (2) in a rude, insolent, or angry manner, (3) with an object capable of producing death or great bodily harm when used as a weapon, (4) that the defendant carried or possessed specifically because it could be used as a weapon, and (5) which the defendant actually used as a weapon, without threatening the use of "violent physical force" against the person of another.  Therefore, aggravated assault upon a peace officer is categorically a violent felony under the ACCA elements clause.  *See Johnson I*, 559 U.S. at 140; 18 U.S.C. § 924(e)(2)(B)(ii).

## B.  *Shooting at or from a Motor Vehicle / Aggravated Battery*

On December 13, 1996, pursuant to a guilty plea, Defendant was convicted of two offenses stemming from the same underlying conduct—namely, Shooting at or from a Motor Vehicle (Great Bodily Harm), in violation of N.M.S.A. § 30-3-8 and Aggravated Battery (Great Bodily Harm/Firearm Enhancement), in violation of N.M.S.A. § 30-3-5.[6]  A habitual offender enhancement was applied at the sentencing for

---

[6] Technically, Defendant was convicted of three offenses stemming from the same conduct, as he pled guilty to one count of shooting *at* a motor vehicle and one count of shooting *from* a motor vehicle, both in violation of the same statute criminalizing "Shooting at or From a Motor Vehicle." N.M.S.A. § 30-3-8.  *See*

these offenses, resulting in an additional one-year sentence for each conviction pursuant

to N.M.S.A. § 31-18-17.  *Doc. 8-1* at 4; PSR ¶ 29.

> i.      Shooting at or From a Motor Vehicle

The PSR includes Defendant's conviction of Shooting at or From a Motor Vehicle

as a "violent felony" predicate for application of an enhanced sentence under U.S.S.G. §

4B1.4(b) pursuant to the ACCA.  PSR ¶ 24.  The portion of the New Mexico statute

defining that offense reads as follows:

> Shooting at or from a motor vehicle consists of willfully discharging a
> firearm at or from a motor vehicle with reckless disregard for the person
> of another.  Whoever commits shooting at or from a motor vehicle that
> does not result in great bodily harm to another person is guilty of a fourth
> degree felony.  Whoever commits shooting at or from a motor vehicle that
> results in injury to another person is guilty of a third degree felony.
> Whoever commits shooting at or from a motor vehicle that results in great
> bodily harm to another person is guilty of a second degree felony.

N.M.S.A. § 30-3-8(B).  This subsection of the statute is divisible in that it sets forth a

second degree felony, a third degree felony, and a fourth degree felony, distinguished

on the basis of the degree of harm caused by an offender's conduct.  The level of harm

caused is contained in alternative elements under the statute, therefore defining three

separate offenses, each with separate punishments.  *See* N.M.S.A. § 31-18-15(A)(7), (11),

(13) (providing for different basic sentences for second, third, and fourth degree

felonies); *Mathis*, 136 S. Ct. at 2256 (instructing that "[i]f statutory alternatives carry

---

*doc. 8-1* at 4.  However, as discussed below, this fact has no material bearing on the analysis of
Defendant's motion, as only one of the offenses may serve as a predicate under the ACCA.  18 U.S.C. §
924(e)(1).

different punishments, then under *Apprendi* they must be elements"). The Court may therefore apply the modified-categorical approach in determining which of these separate offenses Defendant was convicted of committing. *See id.* at 2249.

The state court judgment for this offense provides that Defendant pled guilty to one second degree felony of "shooting from a motor vehicle (great bodily harm)" and one second degree felony of "shooting at a motor vehicle (great bodily harm)". *Doc. 8-1* at 4. As these two offenses stem from the same occurrence or transaction, only one may count towards the application of the ACCA enhancement. *See* 18 U.S.C. § 924(e)(1). The undersigned will therefore treat these two offenses as one conviction for the sake of simplicity.

Defendant was convicted of the second degree felony version of Shooting at or From a Motor Vehicle, which necessarily means that he pled guilty to the element of having caused great bodily harm to another person in committing the offense. Otherwise, he would have been guilty only of a lesser offense. *See* N.M.S.A. § 30-3-8(B). The minimum culpable conduct that could underlie Defendant's conviction of the second degree felony of Shooting at or From a Motor Vehicle (Great Bodily Harm) is: (1) willfully; (2) discharging a firearm at or from a motor vehicle; (3) with reckless disregard for the person of another; (4) resulting in great bodily harm to another person. Defendant argues that one could be convicted of this offense if he "shoots from a motor vehicle in an abandoned stretch of desert with [his] eyes closed[.]" *Doc. 12* at 18. As

15

Defendant admits, however, the statute requires "reckless disregard for the person of another," which in turn requires that anyone convicted under the statute must have "known that his conduct created a substantial and foreseeable risk, that he disregarded that risk[,] and that he was wholly indifferent to the consequences of his conduct and to the welfare and safety of others." NM R CR UJI 14-1704 (incorporated by reference in NM R CR UJI 14-342).

Defendant's analysis is thus flawed in two ways. First, it is unlikely that discharging a firearm in an "abandoned stretch of desert" could reasonably be found by a jury to amount to total "indifferen[ce] . . . to the welfare and safety of others[,]" given that the risk of harming another person must be foreseeable to the shooter and an "abandoned" stretch of desert is by definition unpopulated. Second, the hypothetical minimum culpable conduct proposed by Defendant would not satisfy the elements of the second degree felony under the statute unless his conduct did in fact result in great bodily harm to another person. *See* N.M.S.A. § 30-3-8(B). Thus, even if the Court were to accept the blindly-shooting-in-the-desert scenario as conduct that could be punished under the statute, this construction gives Defendant no shelter. Under one of the essential elements of the offense, his conduct necessarily caused great bodily harm to another person. Therefore, the offense has as an element the use of violent physical force against the person of another, meeting the *Johnson I* definition of a "violent felony." 559 U.S. at 140.

This conclusion stands despite the fact that a second degree felony conviction under the statute does not require that a defendant had any specific intent to cause great bodily harm.  The Tenth Circuit explained in *Ramon Silva* that "[t]he presence or absence of an element of specific intent does not dispositively determine whether a prior conviction qualifies as a violent felony under the ACCA."  608 F.3d at 673.  There, the court considered whether "apprehension causing" aggravated assault (i.e., "engaging in conduct with a deadly weapon that causes the victim to believe or she was about to receive a battery") constituted a violent felony under the ACCA, despite the statute's requirement of only general criminal intent rather than specific intent to cause apprehension in the victim.  *Id.* at 669-73.  In finding that it did, the court held that as long as a defendant intentionally engaged in conduct that "constitut[ed] the threatened use of physical force," such a crime may qualify as a violent felony under the ACCA even if the defendant did not specifically intend to communicate such threat of force. *Id.* at 673.

The *Ramon Silva* court further noted that its own precedent of *United States v. Hernandez*, 568 F.3d 827, 830 (10th Cir. 2009), "is contrary to the dissent's assertion that the discharge of a firearm, committed without the specific intent to injure or to induce fear, would not qualify as a violent felony." 608 F.3d at 674.  Notably, the minimum culpable conduct under the Shooting at or From a Motor Vehicle statute meets that very description.  The court explained that *Hernandez* stood for the proposition that

17

"'knowingly discharg[ing] a firearm at or in the direction of . . . one or more individuals' qualified as a violent felony under the ACCA because the crime constituted 'a real *threat* of the use of physical force against that individual.'" *Id.* (quoting *Hernandez*, 568 F.3d at 830) (emphasis and alterations in original); *see also Hernandez*, 568 F.3d at 832 ("Even if we were to assume that it is possible . . . that one could knowingly discharge a firearm at or in the direction of an individual without actually intending to injure him," such an offense "still involve[s] the purposeful *threatened* use of physical force against the person of another.") (emphasis in original).

Again, the second degree felony of Shooting at or From a Motor Vehicle requires the willful discharge of a firearm with reckless disregard for the person of another, resulting in great bodily harm.  N.M.S.A. § 30-3-8(B).  Applying the same logic as the *Ramon Silva* court, a defendant who willfully engages in conduct constituting the *actual* use of violent physical force, with knowledge of the risk his conduct poses to the welfare and safety of others, has committed a "violent felony" under the ACCA even if he did not specifically intend to use such force.  *See United States v. Fogg*, 836 F.3d 951, 956 (8th Cir. 2016) (holding that a similar statute criminalizing the reckless discharge of a firearm can qualify as a violent felony under the ACCA because "'the word 'use' does not demand that the person applying force have the purpose or practical certainty that it will cause harm, as compared with the understanding that it is substantially likely to do so.'" (quoting *Voisine v. United States*, 136 S. Ct. 2272, 2279 (2016))).

ii.   <u>Aggravated Battery</u>

In the alternative, Defendant was also convicted, pursuant to a guilty plea, of

Aggravated Battery (Great Bodily Harm/Firearm Enhancement) in violation of N.M.S.A.

§ 30-3-5 as a result of the same conduct underlying the Shooting at or From a Motor

Vehicle conviction.  PSR ¶ 29; *doc. 8-1* at 4.  That statute provides:

> A.  Aggravated battery consists of the unlawful touching or application of
>     force to the person of another with intent to injure that person or
>     another.
> B.  Whoever commits aggravated battery, inflicting an injury to the person
>     which is not likely to cause death or great bodily harm, but does cause
>     painful temporary disfigurement or temporary loss or impairment of
>     the functions of any member or organ of the body, is guilty of a
>     misdemeanor.
> C.  Whoever commits aggravated battery inflicting great bodily harm or
>     does so with a deadly weapon or does so in any manner whereby great
>     bodily harm or death can be inflicted is guilty of a third degree felony.

N.M.S.A. § 30-3-5.

Defendant does not address this predicate offense in his briefing.  *See generally*

*doc. 12.*  As the United States notes, the minimum culpable conduct under this statute

requires an intent to injure.  N.M.S.A. § 30-3-5(A); *see doc. 8* at 6.  One certainly could

conclude that the application of force to the person of another with the intent to injure

the person qualifies under *Johnson I* as the threatened use of "force capable of causing

physical pain or injury to another person."  559 U.S. at 140; *see State v. Vallejos*, 9 P.3d

668, 674 (N.M. Ct. App. 2000) ("The aggravated battery statute is directed at preserving

the integrity of a person's body against serious injury.").  However, because Defendant

was convicted of a more serious felony version of aggravated battery, the Court need not decide that question.

Because the statute differentiates between misdemeanor offenses in subsection B and third degree felonies in subsection C, it is divisible. *Mathis*, 136 S. Ct. at 2256 ("If statutory alternatives carry different punishments, then under *Apprendi* they must be elements"). Defendant was convicted of Aggravated Battery in violation of N.M.S.A. § 30-3-5(C), which requires proof of one of the following: (i) that the battery caused great bodily harm; (ii) that the battery was accomplished by the use of a deadly weapon; or (iii) that the battery was accomplished in a manner whereby great bodily harm could be inflicted. *Doc. 8-1* at 4; PSR ¶ 29. While the state court judgment and PSR specify that Defendant's aggravated battery involved great bodily harm, *see id.*, it is unclear whether subsection C is itself divisible under *Mathis* or whether the three options listed therein are merely alternative means of committing third degree aggravated battery. The Court need not decide that question because, no matter how it was committed, a third degree aggravated battery in violation of N.M.S.A. § 30-3-5(C) would qualify as a violent felony under *Johnson I*.

First, aggravated battery that either causes great bodily harm or is otherwise accomplished in a manner whereby great bodily harm could be inflicted is a violent felony. State law defines "great bodily harm" as "an injury to the person which creates a high probability of death; or which causes serious disfigurement; or which results in

20

permanent or protracted loss or impairment of the function of any member or organ of the body[.]"  N.M.S.A. § 30-1-12(A).  Certainly, because the battery caused great bodily harm or was done in a manner whereby great bodily harm could be inflicted, the battery necessarily involved "force capable of causing physical pain or injury to another person" as required by *Johnson I*.  559 U.S. at 140.

Aggravated battery with a deadly weapon also qualifies as a violent felony under the ACCA.  That conclusion is dictated by the Tenth Circuit's recent decision in *United States v. Maldonado-Palma*, 839 F.3d 1244 (10th Cir. 2016).  In *Maldonado-Palma*, the court considered whether a New Mexico conviction for aggravated assault with a deadly weapon categorically constituted a "crime of violence" for the purposes of U.S.S.G. § 2L1.2(b)(1)(A)(ii).[7]  *Id.* at 1246-50.  The sentencing guidelines definition of "crime of violence" is identical to the relevant ACCA provision and is also interpreted pursuant to the modified categorical approach outlined herein.  *See United States v. Ventura-Perez*, 666 F.3d 670, 673 (10th Cir. 2012).  In *Maldonado-Palma*, the court first confirmed that, under New Mexico law, aggravated assault with a deadly weapon requires *use* of the deadly weapon—mere possession does not suffice to satisfy the elements.  839 F.3d at 1249-50.  After reviewing the New Mexico definition of "deadly weapon," the court concluded that employing such a weapon "necessarily threatens the

---

[7] The guideline amendments made effective November 1, 2016 eliminated the relevant text of this portion of the guidelines, which previously instructed the sentencing court to increase a defendant's base offense level if "the defendant previously was deported, or unlawfully remained in the United States, after a conviction for a felony that is . . . a crime of violence[.]"  The revision does not affect the present analysis.

use of physical force, i.e., 'force capable of causing physical pain or injury to another person.'"  *Id.* at 1250 (quoting *Johnson I*, 559 U.S. at 140); *see also Ramon Silva*, 608 F.3d. at 669-71.

As with aggravated assault with a deadly weapon, aggravated battery with a deadly weapon requires proof of use of the deadly weapon under New Mexico law.  *See* N.M.S.A. § 30-3-5(C); *see also* N.M. R. CR. 14-322 (instructing that aggravated battery with a deadly weapon requires proof that the defendant "touched or applied force to" the victim with a deadly weapon and that "[t]he defendant *used*" a deadly weapon (emphasis added)).  Consequently, the logic in *Maldonado-Palma* compels the conclusion that a New Mexico conviction for aggravated battery with a deadly weapon categorically qualifies as a violent felony under the ACCA.[8]  This conclusion is further supported by the fact that the Supreme Court in the *Johnson I* opinion itself cited with approval Black's definition of "violent felony" as "a crime characterized by extreme physical force, such as . . . *assault and battery with a dangerous weapon*" while parsing the meaning of the ACCA's force clause.  559 U.S. at 140-41 (emphasis added).

In conclusion, all three of the means by which one can violate N.M.S.A. § 30-3-5(C) satisfy the force requirement set out in *Johnson I*.  As such, Defendant's conviction under N.M.S.A. § 30-3-5(C) categorically constitutes a "violent felony" under the ACCA.  Therefore, if the Court disagrees that Defendant's conviction of Shooting at or

---

[8] In fact, given that *Maldonado-Palma* involved only an assault, and Defendant's conviction involved a completed battery, the logic applies in even greater force here.

From a Motor Vehicle in violation of N.M.S.A. § 30-3-8(B) is categorically a "violent

felony" under the ACCA, I nevertheless recommend that the Court preserve

Defendant's sentence on the alternative basis of his Aggravated Battery (Great Bodily

Harm) conviction, which stemmed from the same underlying conduct.

   *C.  Attempted Murder*

   Defendant was convicted of Attempt to Commit a Felony, to Wit: First Degree

Murder (Second Degree Felony) pursuant to a guilty plea in July of 1998.  PSR ¶ 33.

First degree murder is defined under New Mexico law as follows:

> A. Murder in the first degree is the killing of one human being by another
> without lawful justification or excuse, by any of the means with which
> death may be caused:
>    (1) by any kind of willful, deliberate and premeditated killing;
>    (2) in the commission of or attempt to commit any felony; or
>    (3) by any act greatly dangerous to the lives of others, indicating a
>    depraved mind regardless of human life.

N.M.S.A. § 30-2-1(A).

   Subsection (A)(2) of this statute refers to felony murder, and attempted felony

murder does not exist in New Mexico.  *State v. Price*, 726 P.2d 857, 860 (N.M. Ct. App.

1986).  Thus, Defendant must have been convicted of attempting to commit one of the

other two types of first-degree murder, consisting of the elements listed in (A)(1) and

(A)(3).  An examination of the charging documents does not reveal which of these two

offenses Defendant committed, although the judgment does state that he received a

firearm enhancement under N.M.S.A. § 31-18-16.  *See doc. 8-2* at 3, 6.  Because the ACCA

includes the "attempted use . . . of [violent] physical force" within the ambit of the

definition of "violent felony," the question is whether the minimum culpable conduct

under both N.M.S.A. § 30-2-1(A)(1) and (A)(3) constitutes the use of violent physical

force against the person of another.  If so, any attempt to commit those offenses would

qualify as a violent felony under the ACCA. *See* 18 U.S.C. § 924(e)(2)(B)(i).

Defendant argues that this crime is not a violent felony under the categorical

approach because "murder may be committed by means that do not involve [the]

degree of violent force [required by the ACCA elements clause], such as by poisoning,

or by setting a trap, or by depriving a person of food and water."  *Doc. 12* at 21.

Defendant argues that none of these methods of first-degree murder "involve[s] the

application of violent physical force contemplated under [*Johnson I*]."  *Id.*

Defendant's arguments in this regard have already been addressed and rejected

by the Supreme Court.  *See United States v. Castleman*, 134 S. Ct. 1405 (2014).  The

defendant in *Castleman* posed a similar argument that, while he committed a crime that

required him to have "intentionally or knowingly cause[d] bodily injury to" the victim,

such a crime did not have as an element the use of physical force because "one can

cause bodily injury without violent contact—for example, by deceiving the victim into

drinking a poisoned beverage."  134 S. Ct. at 1409 (internal quotations omitted).  The

Supreme Court disagreed that such conduct does not entail the use of force:

> [A]s we explained in *Johnson*, "physical force" is simply "force exerted by
> and through concrete bodies," as opposed to "intellectual force or

emotional force."  And the common-law concept of "force" encompasses
even its indirect application . . . .  [T]he knowing or intentional application
of force is a "use" of force.  [The defendant] is correct that under *Leocal v.
Ashcroft*, 543 U.S. 1, 125 S. Ct. 377, 160 L.Ed.2d 271 (2004), the word "use"
"conveys the idea that the thing used (here, 'physical force') has been
made the user's instrument."  But he errs in arguing that although
"[p]oison may have 'forceful physical properties' as a matter of organic
chemistry . . .[,] no one would say that a poisoner 'employs' force or
'carries out a purpose by means of force' when he or she sprinkles poison
in a victim's drink."  The "use of force" in [the defendant's] example is not
the act of "sprinkl[ing]" the poison; it is the act of employing poison
knowingly as a device to cause physical harm.  That the harm occurs
indirectly, rather than directly (as with a kick or punch), does not matter.
Under [the defendant's] logic, after all, one could say that pulling the
trigger on a gun is not a "use of force" because it is the bullet, not the
trigger, that actually strikes the victim.

*Id.* at 1414–15 (internal citations to defendant's briefing omitted).

Castleman dealt with the force required under the definition of "misdemeanor
crime of domestic violence," in 18 U.S.C. § 922(g)(9), which the Court held to be a lesser
amount of force than that required under the *Johnson I* standard.  *See id.* at 1409-13.
However, the reasoning cited above still applies in considering whether attempted first
degree murder in New Mexico requires the use of violent force.  Under *Castleman*,
Defendant's proposed hypothetical minimum culpable conduct of "try[ing] to put
poison in another's coffee cup, but slipp[ing] and fail[ing] to do so," *doc. 12* at 20, would
absolutely require the attempted use of violent physical force against the person of
another, even if such use of force is attempted by indirect means.  Such a defendant
would have necessarily attempted to "employ[] poison knowingly as a device to cause
physical harm"—namely, death.   134 S. Ct. at 1415.  *See also id.* at 1416-17 (Scalia, J.,

concurring in part and concurring in the judgment) ("[I]t is impossible to cause bodily

injury without using force 'capable of' producing that result").

Depriving a person of food and water is another example proposed by

Defendant of a non-violent method he could have employed to attempt murder. *Doc.*

*12* at 21. Yet such deprivation, too, is unconscionably violent. Starvation entails muscle

atrophy, severe dehydration, extreme fatigue, and countless other symptoms marking a

slow, horrific death. *See People v. Jennings*, 237 P.3d 474, 523-25 (Cal. 2010) (rejecting a

defendant's argument that starvation "cannot constitute torture as a matter of law,

because it involves the passive withholding of nourishment[,]" and holding that

evidence was sufficient to support a jury's finding that murder by starvation involved

the infliction of torture, defined as "extreme physical pain and suffering," where the

evidence showed that "prolonged and purposeful deprivation of food and other

nourishment" resulted in the victim "losing nearly half his body weight," and a doctor

testified that the victim had "almost no fat beneath his skin, that his body was breaking

down his muscles for energy, and that he had acute pneumonia as a part of his overall

failure to thrive and the breakdown in his immune system from severe emaciation").

In the wake of *Johnson I*, an opinion replete with such muscular language as

"*violent* force," "substantial degree of force," "strong physical force," and "active

violence," there are certainly clever ways to argue that even that quintessential act of

violence—murder—may not actually require the use of violence after all. But to

26

intentionally cause any effect that could so damage a person's body as to end his life is necessarily an act of extreme violence, no matter the indirectness of the means employed to bring about the fatal consequence. *See Umaña v. United States*, No. 3:08CR134-RJC-2, 2017 WL 373458, at *4 (W.D.N.C. Jan. 25, 2017) ("The conduct element of murder—'an unlawful killing'—necessarily requires physical injury to the body of another person, even if the injury is no more than cessation of that person's heart"). The definition of "violent force" is simply "force capable of causing physical pain or injury to another person." *Johnson I*, 559 U.S. at 140. "That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter." *Castleman*, 134 S. Ct. at 1415. Surely the intentional infliction of causes resulting in the effect of dying of starvation or thirst amounts to "force capable of causing physical pain or injury to another person." In fact, the Supreme Court has referred to attempted murder as the "prototypically violent crime." *James v. United States*, 550 U.S. 192, 208, (2007), *overruled on other grounds by Johnson II*, 135 S. Ct. 2551. The undersigned agrees "that it is impossible to cause death without applying physical force as explained in *Castleman*." *United States v. Checora*, 155 F. Supp.3d 1192, 1198 (D. Utah 2015).

Therefore, I recommend that the Court find that the crime of attempted first-degree murder is a "violent felony" under the ACCA's elements clause.[9]

---

[9] This conclusion is strengthened by the Tenth Circuit's recent reminder that "in construing the minimum culpable conduct [required by the state statute], such conduct only includes that [to] which there is a 'realistic probability, not a theoretical possibility' the state statute would apply." *United States v. Harris*,

### D.  Alternative Predicates

The United States argues that if the Court finds that any of the three predicate offenses discussed above is not a violent felony under the ACCA, Defendant is still not entitled to resentencing due to the two alternative predicate offenses that would justify the fifteen-year sentencing enhancement under the ACCA.  Specifically, the United States points to Defendant's past convictions of Bribery of a Witness (Retaliation), in violation of N.M.S.A. § 30-24-3, and Trafficking (By Possession with Intent to Distribute), in violation of § 30-31-20(A)(3), as alternative predicate offenses justifying Defendant's ACCA sentencing enhancement.  *Doc. 8* at 6-7.

For the reasons explained below, I recommend that the Court find the bribery offense to be a valid alternative basis for preserving the application of the ACCA enhancement to Defendant's sentence.  However, I recommend that the Court reject Defendant's trafficking offense as an alternative predicate.

### i.    Bribery of a Witness (Retaliation)

Defendant was convicted of Bribery of a Witness (Retaliation) pursuant to a guilty plea on July 15, 1998.  *Doc. 8-2* at 3.  The relevant portions of the New Mexico statute provide:

---

844 F.3d 1260, 1264 (10th Cir. 2017) (citing *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1685 (2013)).  It would seem that the imaginative thinking relied upon by Defendant is precisely the kind of conjecture rejected by *Harris*.

A.  Bribery or intimidation of a witness consists of any person knowingly:

. . .

(3) intimidating or threatening any person or giving or offering to give anything of value to any person with the intent to keep the person from truthfully reporting to a law enforcement officer or any agency of government that is responsible for enforcing criminal laws information relating to the commission or possible commission of a felony offense or a violation of conditions of probation, parole or release pending judicial proceedings.

B.  Retaliation against a witness consists of any person knowingly engaging in conduct that causes bodily injury to another person or damage to the tangible property of another person, or threatening to do so, with the intent to retaliate against any person for any information relating to the commission or possible commission of a felony offense or a violation of conditions of probation, parole or release pending judicial proceedings given by a person to a law enforcement officer.

C.  Whoever commits bribery or intimidation of a witness is guilty of a third degree felony.

D.  Whoever commits retaliation against a witness is guilty of a second degree felony.

N.M.S.A. § 30-24-3 (1978).  This statute is clearly divisible insofar as it sets forth the elements for the separate crimes of "bribery or intimidation of a witness" under subsection A and "retaliation against a witness" under subsection B along with different punishments for each.  *See* N.M.S.A. § 31-18-15(A) (dictating a basic sentence of three years imprisonment for a third degree felony and nine years imprisonment for a second degree felony).

Because the statute is divisible, the Court may look to the charging documents to determine to which offense Defendant pled guilty.  Defendant was charged with

Bribery of a Witness (Retaliation) in Count 1 of the indictment, which also charged him in the alternative with Bribery of a Witness (Threats or Bribes – Reporting). *Id.* at 1. It is apparent from the state court judgment that Defendant specifically pled guilty to the "retaliation" subsection of this divisible statute under § 30-24-3(B) rather than to the alternative charge under the "threats or bribes" subsection of § 30-24-3(A)(3). *See doc. 8-2* at 3, 1. However, Defendant presents argument solely pertaining to subsections (A)(1)-(A)(3) of the statute without addressing the retaliation version of the offense. *See doc. 12* at 23-25.

The United States argues that Defendant's conviction under the retaliation provision requires that Defendant "knowingly engag[ed] in conduct that caused bodily injury," and that this offense therefore constitutes a violent felony under the ACCA. *Doc. 8* at 6. For this argument to prevail, the retaliation subsection under § 30-24-3(B), which I have already concluded is divisible from subsection (A), is further divisible. This conclusion follows from the fact that subsection (B) criminalizes two types of harm which or caused or threatened by the perpetrator – "bodily injury to another person" and "damage to the tangible property of another person." N.M.S.A. § 30-24-3(B) (1978). If the "bodily injury" version of the crime is divisible from the "property damage" version, then a conviction under the former will constitute a violent felony and a conviction under the latter will not. If the versions are not divisible, then no conviction under § 30-24-3(B) will qualify. In order to determine divisibility, the Court must

determine if the two types of harm are "means" or alternative "elements."

In *Mathis*, the Supreme Court explained the means/elements distinction that is essential to determining whether a modified categorical approach is appropriate in a given statutory analysis. 136 S. Ct. 2243. The *Mathis* Court addressed a growing trend among lower courts to "repurpose[]" the modified categorical approach "as a technique for discovering whether a defendant's prior conviction, even though for a too-broad crime, rested on facts (or otherwise said, involved means) that also could have satisfied the elements of a generic offense." *Id.* at 2254. In putting a stop to that trend, the Supreme Court instructed the lower courts that before turning to the modified-categorical approach, it must first be established that the statute at issue lists alternative elements, each constituting separate offenses, rather than listing alternative factual means of meeting a single element of an indivisible offense. *See id.* at 2248-54. "Elements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction . . . . Facts, by contrast, are . . . extraneous to the crime's legal requirements." *Id.* at 2248 (internal quotations and citation omitted). The key inquiry is whether the piece of information is something that, at trial, a jury "must find beyond a reasonable doubt to convict the defendant," or is something that "the defendant necessarily admits to when he pleads guilty" at a plea hearing. *Id.* If so, it is an element. If not, it is a fact, which cannot be considered by a court in applying the categorical approach.

31

To answer the "threshold inquiry – elements or means?" – the federal court must first look for a controlling holding from the state court addressing the matter. *Id*. at 2256. "When a ruling of that kind exists, a sentencing judge need only follow what it says." *Id*. Unfortunately, the parties have not cited nor has the undersigned found any state court case ruling on this issue with respect to N.M.S.A. § 30-24-3(B). Next, one turns to the statute to see if it "on its face resolve[s] the issue." *Id*. Again, the question here is not so readily resolved. The distinction between "bodily injury to another person" and "damage to the tangible property of another person" does not yield different punishments, but neither do these retaliatory methods appear to be offered as "illustrative examples" of a single means of committing the offense. *Id*. If, as here, "state law fails to provide clear answers, federal judges have another place to look: the record of a prior conviction itself." Specifically, the Court may briefly examine the record documents:

> . . . for the sole and limited purpose of determining whether the listed items are elements of the offense. . . . Suppose, for example, that one count of an indictment and correlative jury instructions charge a defendant with burgling a "building, structure, or vehicle"—thus reiterating all the terms of Iowa's law. That is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt. So too if those documents use a single umbrella term like "premises": Once again, the record would then reveal what the prosecutor has to (and does not have to) demonstrate to prevail. Conversely, an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime.

*Id.* at 2256-57 (internal quotations and citations omitted).  In keeping with that guidance,

I reviewed the indictment setting forth the bribery charge to which Defendant

ultimately pled guilty.  *Doc. 8-2* at 1-2.  Count One of the indictment charged Defendant

as follows:

> THE GRAND JURY CHARGES: COUNT 1: BRIBERY OF A WITNESS
> (RETALIATION) . . . . [O]n or about the 8th day of April, 1997, in
> Bernalillo County, New Mexico, [Defendant], with intent to retaliate
> against any person for any information, given to a law enforcement
> officer, relating to the commission or possible commission of a felony
> offense, knowingly engaged in conduct that causes bodily injury to
> [victim], or threats to do so, contrary to § 30-24-3, NMSA 1978, as
> amended.

*Id.* at 1.  Clearly, only one of the types of harm listed in N.M.S.A. § 30-24-3(B) is charged

– "bodily injury to another person."  Under the logic of *Mathis*, this fact strongly

supports the conclusion that retaliation against a witness causing or threatening bodily

injury to another is a separate crime from retaliation against a witness causing or

threatening damage to the tangible property of another.  In the absence of contrary state

statutory or case law, I therefore recommend finding the two crimes divisible from each

other.

Defendant thus pled guilty to a crime containing the elements that he: (1)

engaged in conduct that caused or threatened to cause bodily injury to the victim; (2)

knowingly, and with intent to retaliate against the victim; (3) for giving information

relating to the commission or the possible commission of a felony offense, (4) to a law

enforcement officer.  The offense of which Defendant was convicted therefore

unequivocally includes as an element "the use, attempted use, or threatened use of

physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i).

Accordingly, should the Court determine that one, and only one, of the felonies

discussed above does not qualify as violent felonies under the ACCA, I would still

recommend denial of resentencing on the basis of this conviction.

       ii.     <u>Trafficking (Possession with Intent to Distribute)</u>

While my analysis has thus far focused on the "violent felony" provision of the

ACCA, a "serious drug offense" may also underlie the application of the ACCA

enhancement.  The relevant provision reads:

> In the case of a person who violates section 922(g) of this title and has three
> previous convictions by any court referred to in section 922(g)(1) of this title for
> a violent felony *or a serious drug offense*, or both, committed on occasions
> different from one another, such person shall be fined under this title and
> imprisoned not less than fifteen years, and, notwithstanding any other
> provision of law, the court shall not suspend the sentence of, or grant a
> probationary sentence to, such person with respect to the conviction under
> section 922(g).

18 U.S.C.A. § 924(e)(1) (emphasis added).  The ACCA elsewhere defines "serious drug

offense," in pertinent part, as follows:

> As used in this subsection—
> (A) the term "serious drug offense" means—
>    . . .
>    (ii) an offense under State law, involving manufacturing, distributing, or
>    possessing with intent to manufacture or distribute, a controlled
>    substance (as defined in section 102 of the Controlled Substances Act (21

U.S.C. 802)), for which a maximum term of imprisonment of ten years or
more is prescribed by law[.]

*Id.* at § 924(e)(2)(A)(ii).

Though its argument is cursory as to this offense, the United States of America

asserts in its briefing that it "concurs with United States Probation that [Trafficking

(Possession with Intent to Distribute)] is a countable prior under ACCA, as it was

ultimately punishable [by] up to ten years imprisonment." *Doc. 8* at 7. The United

States is presumably referring to the memorandum that the United States Probation and

Pretrial Services filed in this matter as an interested party on July 14, 2016. *Doc. 7*. The

memorandum argues that Defendant's sentence for his July 2, 1997 trafficking

conviction under N.M.S.A. § 30-31-20(A)(3) was enhanced under "a habitual offender

enhancement which brought the statutory maximum penalty up to 10 years," qualifying

the conviction as a "serious drug offense" under the ACCA. *Doc. 7* at 1.

The New Mexico statute under which Defendant was convicted provides, in

pertinent part:

A. As used in the Controlled Substances Act, "traffic" means the:
    . . .
    (3) possession with intent to distribute:
        (a)    a controlled substance enumerated in Schedule I or II
               that is a narcotic drug;
    . . . .
B. Except as authorized by the Controlled Substances Act, it is unlawful
for a person to intentionally traffic. A person who violates this subsection
is:

> (1) for the first offense, guilty of a second degree felony and shall be sentenced pursuant to the provisions of Section 31-18-15 NMSA 1978; and
> (2) for the second and subsequent offenses, guilty of a first degree felony and shall be sentenced pursuant to the provisions of Section 31-18-15 NMSA 1978.

N.M.S.A. § 30-31-20 (1978).  Defendant's PSR demonstrates that his 1997 trafficking offense was classified as a second degree felony.  PSR ¶ 30.  Moreover, the PSR contains no indication that Defendant received a habitual offender enhancement for this offense, although he did appear to receive such an enhancement for his Shooting at or from a Motor Vehicle/Aggravated Battery convictions as well as his conviction for Bribery of Witness (Retaliation).  PSR ¶¶ 29, 30, 32.

New Mexico law provides for different basic sentences of imprisonment for first degree and second degree felonies.  *See* N.M.S.A. § 31-18-15(A)(3), (A)(7) (dictating a basic sentence of eighteen years imprisonment for a first degree felony and nine years imprisonment for a second degree felony).  In applying the modified categorical approach, the fact that Defendant's conviction was classified as a second degree felony indicates that it was his first trafficking offense and, more significantly, that his crime carried a sentence of only nine years imprisonment.  *See id.*  It is therefore clear from the relevant sentencing documents that Defendant was only convicted of the second degree felony of trafficking, which does not qualify as a "serious drug offense" under 18 U.S.C.A. § 924(2)(A)(ii) and cannot serve as a valid predicate under the ACCA.  *Id.* § 924(e)(1).

## IV.   CONCLUSION

Defendant's challenge to his sentence under *Johnson II* should be denied.  Even post-*Johnson II*, his criminal history includes at least three violent felony convictions which trigger the application of the ACCA's fifteen-year mandatory minimum and the sentencing guideline enhancement under U.S.S.G. § 4B1.4(b).  I recommend that the Court find that the convictions qualifying him as an armed career criminal in the PSR—Aggravated Assault on a Peace Officer, Shooting at or From a Motor Vehicle (Great Bodily Harm) (Second Degree Felony), and Attempt to Commit a Felony, to Wit: First Degree Murder (Second Degree Felony)—are all within the definition of "violent felony" under the ACCA elements clause.  If the Court disagrees that any one of these offenses is not a valid predicate offense, I recommend that the Court nevertheless preserve Defendant's sentence on the basis of one or both of the alternative predicate offenses of Bribery of a Witness (Retaliation) or Aggravated Battery (Great Bodily Harm/Firearm Enhancement).[10]

---

[10] Of course, the Court may not use both the Aggravated Battery offense and the Shooting at or From a Motor Vehicle offense as predicate offenses, as both convictions arose from the same underlying conduct. *See* 18 U.S.C. § 924(e)(1).  These predicate offenses may only be applied in the alternative.

Accordingly, I recommend that the Court DENY Defendant's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, and dismiss this case with prejudice.

GREGORY B. WORMUTH
United States Magistrate Judge

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**